IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| **RIDDLE & ASSOCIATES, P.C.**, a Utah Corporation,<br><br>            Plaintiff,<br>v.<br><br>**HEIDI MORCOS**, an individual,<br><br>            Defendant. | **REPORT AND RECOMMENDATION**<br><br>**Case No. 2:06cv972**<br><br>**District Judge Dee Benson**<br><br>**Magistrate Judge Paul M. Warner** |

This matter was referred to Magistrate Judge Paul M. Warner by District Judge Dee Benson pursuant to 28 U.S.C. § 636(b)(1)(B). Before the court is Heidi Morcos's ("Defendant") Motion to Dismiss for Lack of Personal Jurisdiction and for Failure to State a Claim upon which Relief Can be Granted.[1] Defendant is representing herself in this matter. The court has carefully reviewed the memoranda submitted by the parties. Pursuant to United States District Court for the District of Utah Rule of Practice 7-1(f), the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. *See* DUCivR 7-1(f).

## I. BACKGROUND

Riddle & Associates ("Plaintiff") is a Utah law firm specializing in debt collection. Defendant maintains its principal offices in Draper, Utah. Defendant is an individual residing in

---

[1] *See* docket no. 3.

Lexington, Massachusetts.  At all relevant times for purposes of this action, Defendant has resided in Massachusetts.

Sometime before April 2004, Defendant obtained a line of credit in connection with a Chase Visa account (the "Account").  Soon thereafter, Defendant experienced financial difficulties and could no longer make payments on the Account.

On April 1, 2004, Defendant retained Hendel & Collins ("H&C"), a law firm in Springfield, Massachusetts, to represent her pro bono with respect to her financial difficulties.  H&C sent several letters to Chase Visa to inform it that Defendant was represented by counsel and that all subsequent correspondence should be sent to H&C pursuant to the Massachusetts Consumer Protection Act.

Between July 2004 and January 2005, the Account was sold and resold to various debt collection agencies.  H&C had informed each of these agencies by letter that Defendant was represented by counsel and that consumer protection laws prohibited direct contact with her.  Ultimately, the Account was purchased by Midland Funding, LLC ("MF") sometime prior to January 5, 2006.  MF then placed the Account with Midland Credit Management, Inc. ("MCM") for collection.

On January 5, 2006, MCM sent a debt collection letter addressed to Defendant at H&C's address in Springfield, Massachusetts.  On April 13 and June 21, 2006, MCM sent debt collection letters to Defendant's parents' address in Arcadia, California.  On August 11, 2006, H&C sent a letter to MCM informing it of Defendant's current address and financial status and requesting that all future correspondence be sent to H&C.

On August 28, 2006, Plaintiff was retained by MCM to recover on the Account. MCM represented to Plaintiff that the debt was valid, due, and owing. MCM provided to Plaintiff the phone number of 626-826-8124 and an address of Defendant in Arcadia, California. The 626 area code is assigned to the Arcadia, California area. On August 31, 2006, Plaintiff sent a debt collection letter to Defendant at her parents' California address and left numerous messages on Defendant's voice mail for the California phone number seeking payment on the Account.

Plaintiff states that it does not accept for collections any account with a known defense. Plaintiff contends that prior to sending the collection letter to Defendant, Plaintiff thoroughly reviewed the Account to insure that it fell within the legal parameters set out by the Federal Debt Collection Practices Act ("FDCPA"). *See* 15 U.S.C. §§ 1692-1692p. Plaintiff maintains extensive polices and procedures to insure that all aspects of the firm's practice comply with the FDCPA.

On September 22, 2006, Plaintiff received a letter from H&C that accused Plaintiff of violating various aspects of the FDCPA. Specifically, H&C alleged that at the time Plaintiff sent the letter to Defendant's parents' address in California, Plaintiff knew that Defendant was represented by an attorney and knew that Defendant had moved to Massachusetts. Defendant, however, admits that she did not notify Plaintiff of this information but rather had informed MCM and MF of this information.

On November 16, 2006, H&C sent a second letter to Plaintiff, this time accompanied by a draft complaint, again alleging that Plaintiff had violated the FDCPA. In the letter, H&C threatened to file the complaint if a settlement offer was not forthcoming within seven days. In

response, Plaintiff filed the instant lawsuit asking this court to conclude, pursuant to the Declaratory Judgment Act, *see* 28 U.S.C. §§ 2201-2202, that Plaintiff did not violate the FDCPA.

## II.  ANALYSIS

### A.  Personal Jurisdiction

When a court's jurisdiction is challenged under rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing that personal jurisdiction over the defendant is proper.  *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir. 1996).  In the preliminary stages of litigation, the plaintiff bears the burden of establishing a prima facie case of jurisdiction.  *See Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1075 (10th Cir. 1995).  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits."  *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).  All factual disputes regarding jurisdiction are resolved in favor of the plaintiff.  *See id.*  By the same token, because Defendant is proceeding pro se, the court will construe her pleadings liberally.  *See Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir. 2003).

"Before a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) 'whether the applicable statute potentially confers jurisdiction' by authorizing service of process on the defendant and (2) 'whether the exercise of jurisdiction comports with due process.'"  *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir.2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 952 (11th Cir. 1997)) (citing *Omni Capital Int'l Ltd. V. Rudolf Wolff & Co., Ltd.*,

484 U.S. 97, 104 (1987) (finding, in a federal question case, that before a federal court may exercise personal jurisdiction over a defendant, there must be a "basis for the defendant's amenability to service of summons")).  Because the FDCPA does not confer nationwide service of process, the court must determine whether the Utah long-arm statute confers personal jurisdiction by authorizing service of process.  *See United States v. Country Classic Dairies, Inc.*, No. 2:05-CV-00499, 2006 WL 2331061, at *2 (D. Utah August 8, 2006).

> Utah's long-arm statute provides, in relevant part:
>
> Any person . . . who in person or through an agent does any of the following enumerated acts, submits himself . . . to the jurisdiction of the courts of this state as to any claim arising out of or related to:
>
> (1) the transaction of any business within this state;
>
> (2) contracting to supply services or goods in this state;
>
> (3) the causing of any injury within this state whether tortious or by breach of warranty . . . .

Utah Code Ann. § 78-27-24.  This statute is interpreted broadly "so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution." *Id.* § 78-27-22; *see also Starways, Inc. v. Curry*, 980 P.2d 204, 206 (Utah 1999).  The Utah Supreme Court "frequently make[s] a due process analysis first because any set of circumstances that satisfies due process will also satisfy the long-arm statute." *SII MegaDiamond, Inc. v. American Superabrasives Corp.*, 969 P.2d 430, 433 (Utah 1998).

The exercise of jurisdiction over a nonresident defendant comports with due process "'so

long as there exist minimum contacts between the defendant and the forum State.'" *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The "minimum contacts" necessary for specific personal jurisdiction are established "'if the defendant has "purposefully directed" his activities at residents of the forum and the litigation results from alleged injuries that "arise out of or relate to" those activities'" within the forum. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir.1998) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).[2] If the defendant's activities create sufficient minimum contacts, courts then consider "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 113 (1987)).

The court finds that Defendant's contacts with Utah are tenuous. While Defendant's counsel did send two letters to Plaintiff threatening litigation after repeatedly informing the previous holders of the Account, including MF and MCM, of Defendant's status, Defendant has no other contacts or ties with Utah. "Although the Court stated in *Burger King* that the 'fair warning requirement [of specific personal jurisdiction] is satisfied if the defendant has purposefully directed his activities at residents of the forum,' this oft-quoted statement does not

---

[2] The minimum contacts standard is also satisfied, and a court may maintain general jurisdiction over a nonresident defendant, based on the defendant's "continuous and systematic" general business contacts with the forum state. *Helicopteros Nacionales v. Hall*, 466 U.S. 408, 415 (1984). Plaintiff does not allege, nor could it, that Defendant is subject to general personal jurisdiction.

stand for the proposition that any contact with a resident of a forum is sufficient to establish minimum contacts with that forum." *Trujillo v. Williams*, 465 F.3d 1210, 1219 (10th Cir, 2006) (quoting *Burger King*, 471 U.S. at 472) (other quotations and citations omitted).  "'Instead, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."'" *Id.* (quoting *Burger King*, 471 U.S. at 475 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Even assuming that the two letters sent by Defendant's counsel could establish minimum contacts with Utah such that Defendant "should reasonably anticipate being haled into court there," *World-Wide Volkswagen*, 444 U.S. at 297, the court concludes that exercising personal jurisdiction over Defendant would "offend[] traditional notions of fair play and substantial justice." *OMI*, 149 F.3d at 1091 (quotations and citations omitted).  In making this determination, courts assess whether the exercise of personal jurisdiction would be  "'reasonable' in light of the circumstances surrounding the case." *Id.*  In doing so courts consider the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Id.* at 1095.  "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id.* at 1092.

First, the burden on Defendant would be substantial. Requiring Defendant to travel from her home state of Massachusetts to defend this action in Utah would be a considerable burden. Because Defendant has no contacts or ties with Utah other than the two aforementioned letters sent by counsel, the court finds that this factor weighs heavily against an exercise of personal jurisdiction over Defendant.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* at 1096. In the instant matter, the concept of injury to Plaintiff is somewhat speculative at this point; however, for the purposes of this analysis, the court will assume Plaintiff has, in fact, suffered some injury. While Utah may have an "interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders, that interest is diminished were the injury occurred outside the forum state." *Harlow v. Children's Hosp.*, 432 F.3d 50, 67 (1st Cir. 2005) (quotations and citation omitted). In this case, the situs of the alleged injury is arguable. Although Plaintiff sent the alleged violative letters and made the alleged violative phone calls from Utah, Defendant received them in either California or Massachusetts. The underlying matter, Defendant's debt, occurred outside of Utah. The contacts made to Defendant by the previous holders of the Account were made outside of Utah. Thus, while Utah may have some interest in providing a forum for Plaintiff to litigate its dispute, the court does not find that this factor weighs in favor of exercising personal jurisdiction over Defendant.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum." *Benton v. Cameco*, 375 F.3d 1070, 1079 (10th Cir. 2004). The fourth

factor asks "whether the forum state is the most efficient place to litigate the dispute." *Id.* at 1080 (quotations and citation omitted).  In this case, Plaintiff could receive effective, albeit less convenient, relief in Massachusetts or perhaps California.  Utah is not the most efficient forum to litigate this dispute because the underlying credit card agreement was not entered into in Utah, Defendant does not reside in Utah, and the witnesses will likely come from California and Massachusetts.  Accordingly, these factors weigh against exercising personal jurisdiction over Defendant.

      The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Id.* (quotations and citations omitted).  This factor also weighs against exercising personal jurisdiction over Defendant.  As the FDCPA's venue provision states, in relevant part, that "[a]ny debt collector who brings any legal action on a debt against any consumer shall . . . bring such action only in the judicial district or similar legal entity--(A) in which such consumer signed the contract sued upon; or (B) in which such consumer resides at the commencement of the action." 15 U.S.C. § 1692i(a).  While Defendant is representing herself in this matter, she is deemed to have waived improper venue as a defense because she did not raise it in her responsive pleading, *see* Fed. R. Civ. P. 12(h).  Nonetheless, the FDCPA's venue provision demonstrates that Congress intended debt collection actions to be brought in a venue that is convenient to the debtor or at least a venue in which the debtor can expect to be sued for failing to satisfy a debt.

      The court has already concluded that Defendant's contacts with Utah are tenuous, at best. Accordingly, Defendant need not make a particularly strong showing that exercising personal

jurisdiction over her would be unreasonable. *See Benton*, 375 F.3d at 1080. Nevertheless, because the reasonableness factors weigh heavily in favor of Defendant, it is the conclusion of this court that an exercise of personal jurisdiction over Defendant in Utah would "offend[] traditional notions of fair play and substantial justice. *OMI*, 149 F.3d at 1091 (quotations and citations omitted)

### B. The Declaratory Judgment Act

The court concludes that dismissal would also be appropriate under the Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201-2202. The Supreme Court has long held that the Declaratory Judgment Act gives "'the federal courts competence to make a declaration of rights; it did not impose a duty to do so.'" *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982 (10th Cir. 1994) (quoting *Public Affairs Assocs, Inc. v. Rickover*, 369 U.S. 111, 112 (1962)). When determining whether or not to hear a declaratory action, courts consider

> [1] whether a declaratory action would settle the controversy; [2] whether it would serve a useful purpose in clarifying the legal relations at issue; [3] whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race to res judicata; [4] whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and [5] whether there is an alternative remedy which is better or more effective.

*Id.* at 983 (quotations and citations omitted).

Although rendering a decision in this declaratory action would likely settle the controversy as to whether Plaintiff violated the FDCPA, the court concludes that Plaintiff brought this action "for the purpose of procedural fencing or to provide an arena for a race to res judicata." *Id.* Accordingly, perhaps Plaintiff's action would be more appropriate as an

affirmative defense or as a counterclaim to an action filed by Defendant. While sometimes the best defense is a good offense, it is a strategy best left to the sporting arena, rather than litigation. In other words, it appears that Plaintiff's action is an attempt to use a sword rather than wait and rely on a shield. As such, the court also recommends dismissal of Plaintiff's complaint on this alternative ground.

### III.  RECOMMENDATION

Accordingly, **IT IS HEREBY RECOMMENDED** that Defendant's motion to dismiss be **GRANTED**. Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. The parties must file any objection to the Report and Recommendation within ten days after receiving it. Failure to object may constitute waiver of objections upon subsequent review.

**IT IS SO ORDERED.**

DATED this 12th day of June, 2007.

BY THE COURT:

PAUL M. WARNER
United States Magistrate Judge